UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Charles Glenn


     v.                                    Civil No. 06-cv-99-PB


Hillsborough County Department
of Corrections, et al.[1]


**REPORT AND RECOMMENDATION**


    Before the Court is Charles Glenn's pro se and in forma

pauperis complaint brought pursuant to 42 U.S.C. § 1983.  Glenn

alleges that while he was incarcerated at the Hillsborough County

---

[1]Glenn has named the following defendants to this action:
the Hillsborough County Department of Corrections ("HCDC"), HCDC
Superintendent James O'Mara, HCDC Capt. David Dionne, HCDC Capt.
Dempsey, first name unknown ("FNU"), HCDC Capt. FNU Cusson, HCDC
Sgt. Todd Gordon, HCDC Lt. FNU Cunningham, HCDC Director of
Security Bonnie Ives, HCDC Classification Officer William
Raymond, HCDC Nurse Denise Hartley, HCDC Dr. FNU Harris, HCDC Dr.
FNU Ward, HCDC Lt. FNU Gidarokas, HCDC Lt. FNU Scurry, HCDC Lt.
FNU Martano, HCDC Health Services Administrator Barbara Condant,
HCDC Lt. FNU Robinson, HCDC Lt. FNU Hico, HCDC Officer FNU
Archambault, HCDC Officer Roger Copp, New Hampshire State Prison
("NHSP") Warden Bruce Cattell, NHSP employee Joel Dinsmore, NHSP
Sgt. FNU Smith, NHSP Sgt. FNU Morrin, NHSP Lt. FNU Moquin, New
Hampshire Attorney General Kelly Ayotte, Assistant New Hampshire
Attorney General Karen Huntress, Assistant New Hampshire Attorney
General Charles O'Keefe, and Assistant New Hampshire Attorney
General Mark Brown.  Glenn has named all of the individual
defendants to this action in both their individual and official
capacities.

Department of Corrections ("HCDC") and the New Hampshire State
Prison ("NHSP"), he was subjected to conditions of confinement
that violated his federal constitutional rights.  The matter is
before this Court for preliminary review to determine, among
other things, whether the complaint states any claim upon which
relief might be granted.  See United States District Court for
the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  As
discussed fully herein, I recommend the dismissal of the eleven
unexhausted claims, as identified herein, from this action.  I
further recommend that Cunningham, Raymond, Gidarokas, Martano,
Robinson, Hico, Cattell, Dinsmore, Smith, Morrin, Moquin, Ayotte,
Huntress, O'Keefe, and Brown be dismissed as defendants to this
action.  In an Order issued simultaneously with this Report and
Recommendation, I direct that the remaining claims be served
against defendants Cusson, Archambault, Dempsey, Ives, Dionne,
Gordon, Copp, Scurry, Ward, Harris, Condont, and O'Mara as
specified in that Order.

### Standard of Review

Under this court's local rules, when an incarcerated
plaintiff commences an action pro se and in forma pauperis, the
magistrate judge is directed to conduct a preliminary review and

to prepare a report and recommendation advising the district judge whether the action, or any portion thereof, should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or

> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally.  See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), cert. denied, Ahmed v. Greenwood, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the petitioner and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard

of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

<u>Background</u>

Charles Glenn was detained pretrial at the HCDC on October 7, 2005 on a homicide charge.  Upon his intake at the HCDC, Glenn's clothing was taken from him and he was placed in a bare intake cell with only an apron-like garment, no linens, and no hygiene products.  He was also locked down twenty-four hours a day and was not allowed to speak at all.  These conditions continued until October 11, 2005, when Glenn was transferred to the Secure Housing Unit at the NHSP.  He was immediately placed on in-cell twenty-four hours per day confinement for twelve days. He stayed at the NHSP until November 24, 2005, when he was transferred back to the HCDC.

Glenn complains that during his time at the NHSP, his incoming mail was searched, seized, read, and forwarded to the Attorney General's office to be used in the prosecution against him.  The NHSP officials justified this practice on the grounds

that the NHSP investigations officers often conduct
investigations in conjunction with the Attorney General's office
and that in this instance, they were investigating the possible
violation of a "no contact" bail order issued by the court
preventing Glenn from corresponding with a woman named Wanda
Diaz.  Glenn alleges that there was no order prohibiting Diaz
from contacting Glenn, however, and that the warrantless seizure
of his mail was unreasonable and therefore unconstitutional.

On November 24, 2005, Glenn was transferred back to the
HCDC.  According to the documents submitted by Glenn, he was
transferred due to his behavior at the NHSP.

Once back at the HCDC, Glenn was denied any out-of-cell
exercise time, was strip-searched one to three times daily during
November and December 2005, was videotaped during strip searches
and in the shower, was placed in a cold cell, was given out-of-
cell time between 3:30 - 4:30 a.m., was forced to have the lights
on all night, was not given enough food to sustain his health and
body weight, was locked down for 23-24 hours per day due to his
homicide charge, rather than due to behavior at the HCDC, was
denied adequate mental health treatment as he was not given his
necessary medication to treat his post-traumatic stress disorder

and his attention deficit hyperactivity disorder, was denied

necessary hygiene items such as soap and a toothbrush, was denied

access to any religious materials, and was not given any paper or

writing instruments to allow him to correspond with the courts

and his attorney.[2]

Discussion

I.   Unexhausted Claims

To the extent that plaintiff seeks redress for alleged

violations of his constitutional rights by any individual state

or county agency or employee, he attempts to state a claim under

42 U.S.C. § 1983.  Section 1983 which creates a cause of action

against those who, acting under color of state law, deprive

individuals of "any rights, privileges or immunities secured by

the Constitution and laws" of the United States.  See 42 U.S.C. §

1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on

_____

[2]In his complaint Glenn makes reference to the prohibition
against cruel and unusual punishment in the Eighth Amendment.
Because the events complained of occurred when Glenn was a
pretrial detainee housed at both the HCDC and the NHSP, the
constitutional obligation to provide him with constitutional
conditions of confinement flows from the Fourteenth Amendment's
Due Process Clause, rather than the Eighth Amendment's
prohibition against cruel and unusual punishment.  Bell v.
Wolfish, 441 U.S. 520, 555 (1979); Elliott v. Cheshire County,
940 F.2d 7, 10 (1st Cir. 1991).  All of the claims alleged as
violations of the Eighth Amendment, therefore, will be liberally
construed as alleging Fourteenth Amendment violations.

other grounds by <u>Daniels v. Williams</u>, 474 U.S. 327 (1986);

<u>Rodriguez-Cirilo v. Garcia</u>, 115 F.3d 50, 52 (1st Cir. 1997).

An action brought pursuant to § 1983 alleging a violation of constitutional rights based on prison conditions must be exhausted through a prison's administrative grievance procedures prior to the filing of the action.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."  <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The adequacy of the prison grievance procedures available to an inmate to address his specific claims is not relevant to the question of exhaustion.  Exhaustion through prison administrative grievance procedures is required even if some or all of the relief desired by the inmate is not available through that process.  <u>Booth v. Churner</u>, 532 U.S. 731, 734 (2001).  "[T]here is no 'futility exception' to the . . . exhaustion requirement."

<u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 35 (1st Cir. 2002).

If any grievance procedures exist at the defendant institution, the plaintiff must utilize them <u>before</u> filing an action in this court, regardless of the ability of the facility's grievance process to provide the relief sought.  <u>Acosta v. U.S. Marshals Serv.</u>, 445 F.3d 509, 514 (1st Cir. 2006) (citing <u>Medina-Claudio</u>, 292 F.3d at 36 for the proposition that § 1997e(a) "clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement.  Exhaustion subsequent to the filing of suit will not suffice.") (emphasis in original)); <u>see</u> <u>also</u> <u>Dullen v. Cheshire County</u>, Civ. No. 05-cv-139-PB 2006 WL 995131 *3 (D.N.H. Apr. 14, 2006).

Glenn has attached, to the amendment to his complaint, a number of documents demonstrating that he has clearly exhausted some of his claims against the HCDC and its employees by filing an Inmate Request Form, then, when the issues were not resolved, filing a grievance that was considered by a Captain and then reviewed by Superintendent O'Mara.  Glenn's submissions, however, also demonstrate that Glenn did not grieve every issue that he raises in his complaint, and that for those claims which he began

to exhaust through the administrative grievance procedure, he failed to utilize all of the remedies available to him at the HCDC and the NHSP.  Accordingly, I find that Glenn has not demonstrated that he has completely exhausted all of his claims, and I recommend to the District Judge that the claims which have not been fully exhausted be dismissed from the complaint without prejudice to refiling after those claims are properly exhausted. See 42 U.S.C. § 1997e(c)(1) (requiring the Court to dismiss a prison conditions action *sua sponte* if the Court is satisfied that the plaintiff has failed to state a claim upon which relief might be granted)[3]; LR 4.3(d)(2)(A).

Glenn has not demonstrated that the following claims raised in his complaint have been exhausted, as Glenn has provided no documentation of any administrative grievance process or has provided documentation showing only partially completed grievance procedures:

---

[3]At least one federal appeals court has found that the failure to allege exhaustion in the complaint does not constitute failure to state a claim, as the prisoner bears no obligation to plead exhaustion.  Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).  The Anderson Court held, however, that a reviewing court may raise the exhaustion issue *sua sponte* where the plaintiff inmate is given a chance to respond prior to the case being dismissed.  Id. at 682–83.

1.    Plaintiff was subjected to inhumane conditions of
      confinement between October 7, 2005 and October 11,
      2005 at the HCDC as he was provided with inadequate
      clothing and linen to keep warm, was denied all hygiene
      products, was kept on lockdown for the entire four
      days, and was not permitted to speak at all during
      those four days, in violation of his Fourteenth
      Amendment right to humane conditions of confinement;

2.    During his time at NHSP, plaintiff was kept in constant
      confinement for 24 hours/day at the Secure Housing Unit
      in violation of his Fourteenth Amendment right to
      humane conditions of confinement;

3.    Plaintiff's privacy was violated at the HCDC when strip
      searches of his persons and his showers were
      videotaped, in violation of his Fourth Amendment
      privacy rights;

4.    Plaintiff was denied all access to religious materials,
      including religious reading material during part of his
      stay at the HCDC in violation of his First Amendment
      right to exercise his religion;

5.    While at HCDC, Plaintiff was denied the ability to
      access the courts and his attorney because he was
      denied all paper, writing instruments and other
      materials necessary to correspond with the courts and
      his attorney in violation of his First Amendment right
      to access the courts;

6.    Plaintiff was prevented from speaking to other inmates
      in order to organize legal action against the HCDC for
      abusive practices against inmates by the initiation of
      a disciplinary action against him designed to chill his
      First Amendment right to petition the government for a
      redress of grievances, and by institutional rules that
      are unconstitutional as they were applied to Glenn;

7.    Plaintiff was not given soap while at the HCDC in
      violation of his Fourteenth Amendment right to humane
      conditions of confinement;

8.  The NHSP illegally seized and searched Glenn's mail in violation of his First and Fourth Amendment rights (grievance filed with the Warden of the NHSP but not the Commissioner of the New Hampshire Department of Corrections);

9.  The HCDC illegally monitored Glenn's phone conversations (suppression motions filed in the state courts but no grievance filed in the HCDC);[4]

10.  The HCDC conducted unreasonable strips searches of Glenn (Glenn filed an Inmate Request Form which was denied by Capt. Dionne who stated that "searches are random" but no grievance to the Superintendent was filed);

11.  At both the NHSP and the HCDC, Glenn was improperly placed on a 23-24 hour/day lockdown due to the severity of the pending charge against him, rather than any bad behavior in the institution, which subjected him to improper punishment during his pretrial detention (Glenn filed an Inmate Request Form at the HCDC and an Inmate Request Slip at the NHSP, but never filed anything with the administrative heads of those institutions).

---

[4]The monitoring challenged in this claim actually took place during a previous incarceration of Glenn's in the HCDC.  At least one federal appeals court has found, however, that if an inmate is reincarcerated in the facility where he has previously been subjected to a constitutional violation, he is required to use the available grievance process to exhaust the claim before coming to this Court.  Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004).  The First Circuit has ruled that exhaustion requirements apply if exhaustion is logistically possible.  See Medina-Claudio, 292 F.3d at 34 (transfer from one prison to another does not affect inmate's obligation to exhaust administrative remedies in the first facility for incidents that occurred there before filing suit).

I recommend that these claims, numbered one to eleven, be dismissed because Glenn did not fully exhaust his administrative remedies with respect to those claims.  The need to dismiss these claims at this time is in no way a comment on the substantive merits of the claims.  If this recommendation is approved, the dismissal will be without prejudice; Glenn is free to exhaust his claims and file an additional action in this Court regarding those claims.

II.  Exhausted Claims

Glenn has demonstrated exhaustion of the administrative remedies available to him for the remainder of his claims before this Court.  Accordingly, I will conduct preliminary review of the following claims to determine whether or not Glenn has stated any claim upon which relief might be granted.

I note at the outset that Glenn has relied on the Constitution's prohibition against cruel and unusual punishment in asserting his claims.  However, because Glenn was a pretrial detainee rather than a convicted inmate at the time the violations were alleged, his claims are properly pressed under the due process protections afforded a pretrial detainee under the Fourteenth Amendment.  See, e.g., Lyons v. Powell, 838 F.2d

28, 29 (1st Cir. 1988) (per curiam) (rejecting an Eighth
Amendment challenge to pretrial detention).  Detainees have a
constitutional right under the due process clause of the
Fourteenth Amendment to be free of punishment.  See O'Connor v.
Huard, 117 F.3d 12, 15 (1st Cir. 1997), cert. denied, 522 U.S.
1047 (1998).  However, challenged conditions or restrictions
which can be rationally related to some legitimate administrative
goal or security concern generally will not be deemed
unconstitutional "punishment."  Id.  Therefore, the issue in
evaluating claims by a pretrial detainee is ultimately whether
the conditions of confinement were reasonably related to a
legitimate state interest or were intended instead as punishment.
See Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st
Cir. 1995).

     12.  Cell Conditions at HCDC

     While at HCDC, Glenn alleges that he was not permitted
adequate exercise, as he was only allowed to exercise in his cell
or walk around his housing area during his out-of-cell time.
Glenn alleges that the exercise he could do in the confines of
his cell was inadequate to maintain his health.  Glenn grieved
this issue to the HCDC officials and was not given relief through

that process.  Glenn names Cusson, Dempsey, Dionne, O'Mara and
Archambault as defendants to this claim.

Glenn further alleges that his strict conditions of
confinement were not related to any penological interest because
he was not poorly behaved at the HCDC, but were only related to
the severity of the charge against him.  For that reason, Glenn
alleges that lack of access to exercise, as well as the other
harsh conditions of his pretrial confinement, were attributable
to a heightened security status imposed as pretrial punishment
for the charges against him and therefore violate his due process
rights.

At the HCDC, Glenn received only one hour of out-of-cell
time each day.  On at least six occasions, that time was afforded
him between 3:30 and 4:30 in the morning.  His grievance on this
matter was deemed "unfounded" and no action was taken to provide
out-of-cell time at a more reasonable hour.  Glenn alleges that
this violation of his rights was again due to the fact that he
was being punished, with severe restrictions on his liberty
because of his charge, rather than as a result of a criminal
conviction.  Glenn alleges that these violations were effected by
defendants Dionne and O'Mara.  Glenn further alleges that the

lights in his cell were kept on all night until he complained to Dionne about it, creating an environment in which it was difficult to sleep.  He alleges that Dionne is responsible for the lights in his cell.

Glenn also alleges that he was housed in a cell without adequate heat in violation of his due process rights under the Fourteenth Amendment.  Because of the uncomfortable temperature in his cell, Glenn alleges he got a runny nose and cold feet. His grievance on this matter was deemed "unfounded" and no further action was taken.

As a pretrial detainee, Glenn is entitled to non-punitive conditions of confinement.  While the defendants in this matter have no obligation to make incarceration pleasant for the plaintiff, even at the pretrial stage, they are required to provide living conditions that are humane and are not the result of punishment for the charges against him.  Therefore, while the various cell conditions Glenn complains of might not constitute unconstitutionally inhumane conditions of confinement if considered individually or in isolation or for a convicted prisoner, liberally construing Glenn's claims, as I must at the preliminary review stage of the proceedings, the combination of

conditions described, combined with the allegation that these conditions were imposed to punish Glenn for the severity of his charge, is cognizable in a § 1983 action, as it alleges a violation of Glenn's Fourteenth Amendment due process rights. Accordingly, in an Order issued simultaneously with this Report and Recommendation, I will direct that this claim be served on defendants Cusson, Dionne, Archambault, and O'Mara.  See LR 4.3(d)(2)(A)(i).

      13.  Inadequate Food

The Fourteenth Amendment is at least as protective of the rights of pretrial inmates as the Eighth Amendment is of sentenced inmates.  The Eighth Amendment prohibits any punishment which violates civilized standards of decency or involves the "unnecessary and wanton infliction of pain."  Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle, 429 U.S. at 102-03). An Eighth Amendment claim challenging conditions of confinement contains both an objective and a subjective component.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him "the minimal civilized measure of life's necessities."

Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs.  See Farmer v. Brennan, 511 U.S. 235, 834 (1994); Wilson, 501 U.S. at 298-99.  Deliberate indifference is the reckless disregard of a substantial risk of serious harm. "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety."  Farmer, 511 U.S. at 835.

Glenn alleges that he was denied adequate food to sustain his health and maintain a healthy weight.  Glenn attempted to grieve these issues to HCDC officials on several occasions and was advised that dieticians approve the HCDC meals according to nationally established standards for caloric intake.  Glenn alleges, however, that he is larger than average and requires greater than average caloric intake.  It does not appear that the HCDC officials made any effort to assess Glenn individually to assure that his nutritional needs were being met, despite the fact that he advised them that the diet was causing health problems for him, namely, Glenn alleges that he lost 33 pounds between November 24, 2005 and March 1, 2006 at an unhealthy rate.

For purposes of preliminary review, Glenn has alleged enough to indicate that he may be able to state a claim for a deprivation of his right to the basic necessities of life.  Glenn has named Dempsey, Dionne, Ives, and O'Mara as defendants to this claim. In my Order issued simultaneously with this Report and Recommendation, I will direct that this claim be served on those defendants.  See LR 4.3(d)(2)(A).

14.  Inadequate Mental Health Treatment

Glenn alleges that at HCDC, he was denied adequate treatment for his serious mental health needs.  Glenn alleges that he entered the HCDC on medication for post-traumatic stress disorder and attention deficit hyperactivity disorder, and that medication was not provided for him during his pretrial incarceration, causing him to suffer unnecessarily from his serious mental health conditions.  Glenn alleges that he complained to the defendants that he was in need of treatment for his mental health conditions but was denied treatment.  Glenn further alleges that the defendants were aware that on a prior HCDC incarceration, Glenn required medication for these conditions and that the HCDC medical staff was aware that Glenn was taking prescribed medication for his conditions prior to his October 7, 2005

admission to the HCDC.

The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs. See Farmer, 511 U.S. at 831. To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff has a serious medical need for which adequate care has not been provided. Farmer, 511 U.S. at 831; Rhodes, 452 U.S. 347; Estelle, 429 U.S. at 106. The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment. Estelle, 429 U.S. at 106. A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault v. Mun'y of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991) (defining a serious medical need as one "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention.'").  The Eighth Amendment applies to a prison's administration of medical care, including mental health care. See DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991); Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (recognizing deliberate indifference to an inmate's mental health needs violates the Eighth Amendment).

"Adequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.  United States v. DeCologero, 821 F.2d 39, 42–43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care."  Torraco, 923 F.2d at 234.  Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  Wilson v. Seiter, 501 U.S. 294, 302 (1991).

Glenn has alleged serious mental health conditions that have been identified by medical personnel in and out of the HCDC as needing medication.  Glenn has also alleged that the defendants to this claim were aware of Glenn's need for medication and have denied it to him nonetheless.  I find therefore that Glenn has adequately alleged a claim of deprivation of adequate mental health care, by virtue of the defendants' deliberate indifference to his mental health needs, and I will direct this claim to proceed in my Order issued simultaneously with this Report and Recommendation against HCDC medical staff defendants Ward, Harris, Hartley, Condont, and against O'Mara.

15.  <u>Restricted Speech</u>

Glenn alleges that he was not allowed to speak to any inmates during his incarceration at HCDC.  Upon grieving this issue, he was advised by Sgt. Gordon that he could in fact speak to other inmates, but was not permitted to speak to any inmate in lockdown or to speak in a way that disturbed the unit.  Given that Glenn spent a good part of his HCDC pretrial incarceration in a unit of locked down cells, Glenn's claim amounts to an allegation that the rules are unconstitutional as applied to him, as they impede his First Amendment right to free speech, and his

Fourteenth Amendment due process rights.  Glenn has attached a
copy of a disciplinary report in which he was subjected to
disciplinary charges for participating in a cell–to–cell
conversation between the inmates on lockdown regarding organizing
to fight the abusive treatment of prisoners at the HCDC through
legal action.  The disciplinary charges were not for speaking to
inmates in lockdown or disrupting the unit, but for "Inciting
Deceptive Mail Practices," because another inmate involved in the
discussion talked about sending letters to the Department of
Justice and the press through outside third parties so that the
mail would not be censored by HCDC officials.  In fact, after
reviewing the report of the incident, the shift commander
recommended reviewing the outgoing mail of the inmates involved
in the discussion.

The First Amendment's guarantee of a right to petition the
government for a redress of grievances has been characterized as
"among the most precious of the liberties safeguarded by the Bill
of Rights."  United Mine Workers v. Ill. State Bar Ass'n, 389
U.S. 217, 222 (1967).  The right of petition, in the prison
context, means that inmates must be "permit[ted] free and
uninhibited access . . . to both administrative and judicial

forums for the purpose of seeking redress of grievances against state officers." Sostre v. McGinnis, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), cert. denied, Sostre v. Oswald, 404 U.S. 1049 (1972). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that . . . section 1983 [is] intended to remedy." Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988) (internal quotations omitted).

A prisoner's right to petition the government for a redress of grievances under the First Amendment precludes prison officials from retaliating against a prisoner by punishing him for actions he takes in the exercise of those rights. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). While prison officials may make policy that is reasonably related to legitimate penological interests, even at the expense of certain constitutional rights, Beard v. Banks, 126 S.Ct. 2572, 2579 (2006) (citing Turner v. Safley, 482 U.S. 78, 89-90 (1987)), "actions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms." Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) (citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir,. 1979)); see also Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993), cert. denied,

512 U.S. 1209 (1994) (prison officials cannot lawfully impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right).

Glenn alleges that he was not permitted to speak as a result of discussing potential legal action against abusive practices by HCDC employees.  To the extent that the rules restrict talking to inmates in lockdown, any inmate on the locked down unit for any length of time is essentially forbidden from talking at all because the other inmates within earshot are also locked down. Therefore, in addition to stating a claim that his First Amendment rights were violated, the speaking restriction may state a claim that the restriction imposes a punitive condition when applied to a pretrial inmate who is housed in a lockdown because his charge is serious, in violation of Glenn's Fourteenth Amendment due process rights.

Accordingly, I find that this restriction on speaking sufficiently alleges a violation of Glenn's First and Fourteenth Amendment rights to allow it to proceed.  Glenn names Sgt. Gordon, Roger Copp, Lt. Scurry, and O'Mara as defendants to this action.

III. <u>Official Capacity Suit/Municipal Liability</u>

Glenn has named all of the defendants to this action in both their individual and official capacities.  As I recommend dismissal of all of the state-employed defendants to this action on the grounds that Glenn has failed to state claims against them, I address the official capacity suit as it applies to a suit against a municipal or County employee.  An official capacity suit is one that essentially sues the government entity in the stead of a person responsible for the alleged conduct.

Municipalities and local government entities are "persons" within the meaning of § 1983.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  Under New Hampshire law, counties, such as Hillsborough, are considered local governmental units.  <u>See</u> N.H. Rev. Stat. Ann. ("RSA") 507-B:1 (1997) (defining "governmental unit" as "any political subdivision within the state including any county, city, town . . ., but [not including] the state or any department or agency thereof.").  In order to maintain an official capacity suit against the county of Hillsborough as a municipality under § 1983, the claim must be grounded upon an unconstitutional municipal custom or practice and two requirements must be met.  "First, the custom or practice

25

must be attributable to the municipality, i.e., it must be 'so
well settled and widespread that the policymaking officials of
the municipality can be said to have either actual or
constructive knowledge of it yet did nothing to end the
practice.'"  Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir.
2000) (quoting Bordanaro v. Mcleod, 871 F.2d 1151, 1156 (1st
Cir.), cert. denied, Everett v. Bordanaro, 493 U.S. 820 (1989)).
Second, the custom must have been the cause of and "the moving
force" behind the deprivation of constitutional rights.  Wood v.
Hancock County Sheriff's Dep't, 354 F.3d 57, 64 (2003) (citing
Miller, 219 F.3d at 12.  Glenn has not asserted any facts that
demonstrate that the county of Hillsborough engaged in a custom
or policy of allowing or enabling employees of the HCDC to
violate the plaintiff's rights in the manner described in Glenn's
complaint.  I find, therefore, that Glenn has not stated a claim
against the county of Hillsborough, and I recommend that the
official capacity suits be dismissed from this action and the
action proceed against the County defendants who remain in this
action only in their individual capacities.

V.   <u>Supervisory Liability</u>

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions."  <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998).  A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation."  <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization."  <u>Id.</u> at 44.  Here, Glenn has alleged that O'Mara, in his supervisory capacity, specifically approved the exhausted claims by reviewing Glenn's grievances and expressly refusing to take any action to correct the problem addressed in the grievance.  Therefore, Glenn has sufficiently alleged that O'Mara condoned or authorized the actions that Glenn asserts violate his constitutional rights.  Accordingly, I find that Glenn has adequately stated claims against O'Mara in his supervisory capacity to allow them to proceed at this time.

<u>Conclusion</u>

I find that Glenn has stated claims for unconstitutionally punitive conditions of confinement, inadequate food, inadequate

mental health care and treatment, and the unconstitutional restriction of his right to petition the government for a redress of grievances; I will direct, in my Order issued this date, that these claims be served on defendants Cusson, Dionne, Archambault, O'Mara, Dempsey, Dionne, Ives, Ward, Harris, Hartley, Condont, Gordon, Copp, and Scurry.  I recommend the remaining claims and defendants be dismissed from this action.

Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date:  October 3, 2006

cc:    Charles Glenn, pro se

28